THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR22-053-LK |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| ERIC KIKKERT, | ) | |
| Defendant. | ) | |

Eric Kikkert respectfully joins the Probation Department and the Government in recommending a time-served sentence with three years of supervised release. Mr. Kikkert objects to certain special conditions recommended by the Probation Department and Government.

The Probation Department recommendation thoughtfully sets forth the mitigating aspects of this case which include Mr. Kikkert's mental health issues, military service, compliance with supervision and services while on pretrial supervision, and past trauma. A custodial sentence would only interrupt the positive progress made by Mr. Kikkert thus far.

I.     PROCEDURAL HISTORY

Mr. Kikkert was charged by complaint on April 1, 2022, with one count of interstate threats in violation of 18 U.S.C. § 875(c). Dkt 1. On April 13, 2022, he was charged by indictment with two counts of making interstate threats against House

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Speaker Nancy Pelosi and Senator Ted Cruz. Dkt 9. On May 10, 2022, Mr. Kikkert pled guilty to threatening Speaker Pelosi. Dkt. 19 and 21. In the plea agreement, the parties agreed to recommend a sentence of time served. *Id*.

On June 8, 2022, Magistrate Judge Vaughan ordered Mr. Kikkert released on bond on July 5, 2022. Dkt 28 and 29. Upon his release, Mr. Kikkert obtained mental health, medical, and housing assistance from the Veterans Administration (VA). *Id*.

## II. THIS COURT SHOULD FOLLOW THE TIME-SERVED RECOMMENDATION MADE BY THE PARTIES AND PROBATION DEPARTMENT.

The parties recognize that the jointly recommend sentence is well-below the advisory guideline range.[1] However, it is an appropriate sanction after careful consideration of the 18 U.S.C. § 3553(a) factors.

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), courts have continued to emphasize that "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). In *Nelson*, the Supreme Court – by a per curiam decision – summarily reversed the Fourth Circuit for affirming a district judge who called the Guidelines "presumptively reasonable" and said that "unless there's a good reason in the [3553(a)] factors . . ., a Guideline sentence is the reasonable sentence." *Id*.

There are few limitations on what a sentencing judge can consider for just punishment. Factors which the mandatory Guidelines previously deemed "not ordinarily relevant" – considerations like age (including youth), education and vocational skills, mental and emotional conditions, physical conditions, lack of guidance as a youth, and disadvantaged upbringing, all under U.S.S.G. Chapter 5, Part H – now merit our renewed attention under 18 U.S.C. § 3553(a), as the district court

---

[1] Mr. Kikkert has no objection to the advisory guideline range set forth in the Presentence Report.

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

arrives at a parsimonious sentence, i.e., one that is "sufficient, but not greater than necessary."

### A. Mr. Kikkert's history and characteristics support a time-served sentence

Mental health problems related to the offense are mitigating factors that may warrant a sentence below the advisory guideline range. *See Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.")

As noted in the Probation Department's sentencing recommendation and the PSR, Mr. Kikkert's adult life has been marked by trauma and Post Traumatic Stress Disorder. Mr. Kikkert enlisted in the Army at a young age and served in the Iraq war. While serving in Baghdad, Mr. Kikkert worked as in engineer. He repaired vehicles that were damaged in combat. This would regularly require Mr. Kikkert to clean and fix vehicles that contained blood or even body parts of injured soldiers. Mr. Kikkert also worked as a welder building concrete traffic barriers around the Baghdad. These night missions frequently came under light arms attacks. The arc torches used to weld the barriers together would light up the night sky, making his unit an easy target.

Not surprisingly, Mr. Kikkert developed PTSD from his military service. While he is defensive about some aspects of the mental health issues identified by experts, he has some insight into his PTSD as it relates to the offense conduct. In the military, he learned as a soldier that his duty to constantly defend the Constitution. He also learned through training and his experience in a combat zone to be hyper-vigilant. Mr. Kikkert admits he has something of a "hero complex" where he believes that it is his duty to "right every wrong." He is also hyper-vigilant, so he sees threats even where none exist.

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  His hyper-vigilance is likely exacerbated by his exposure to some types of media. In his
2  PTSD treatment he receives from the VA, Mr. Kikkert is working on these issues.
3       At the end of his military service, Mr. Kikkert self-medicated with alcohol. He
4  was drinking heavily by the time he was honorably discharged from the military. He
5  stopped drinking shortly thereafter and there were times when he continued drinking
6  alcohol. He finally stopped drinking in 2018 when he joined sober support groups in
7  conjunction with a two-year PTSD counseling program. While in pretrial supervision,
8  Mr. Kikkert has tested negative for drugs and alcohol.
9       After his military experience, Mr. Kikkert continued to be beset by traumatic
10 events. In 2013, he was attacked outside of a bar by a group of bikers and suffered
11 injuries to his back and neck. This resulted in a major disruption in his life. He could no
12 longer work, and his wife kicked him out of the house, leaving him homeless for a
13 period of time.
14      By 2017, Mr. Kikkert had regained some stability. He found employment and
15 was living in an apartment with some other men in California. However, he was
16 drugged and raped, presumably by a roommate or a roommate's acquaintance. He
17 reported the assault, but law enforcement did not believe him. His mother eventually
18 sent him money to come back to Washington. Upon his return to Washington, he
19 struggled with homelessness until he was approved for VA and housing benefits. With
20 these benefits, he was able to rent an apartment.
21      In 2019, Mr. Kikkert's father died of an accidental drug overdose. At about the
22 same time, he was stabbed by his girlfriend, receiving injuries that still require physical
23 therapy. This, and the ensuing COVID epidemic created a difficult confluence of events
24 for Mr. Kikkert, leading into the offense conduct.
25
26

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Kikkert was arrested for the current offense on April 1, 2022. After some initial resistance, Mr. Kikkert came to understand that his conduct was inexcusable. He pled guilty less than six weeks later on May 10, 2022.

Mr. Kikkert was released on bond on July 5, 2022. He currently lives at the William Booth Center, a shelter run by the Salvation Army in partnership with other agencies, including the Department of Veterans Affairs. His housing and VA benefits have since been reinstated and he is on a waiting list for an appropriate housing placement.

Mr. Kikkert is actively engaged with various treatment programs through the VA. He sees a clinical psychologist biweekly and attends a co-occurring disorder group (Act of Recovery) weekly. He recently started a Coping Skills group as well.

One point of friction is Mr. Kikkert's views toward psychiatric medications. The evaluation recently completed by the VA Puget Sound Mental Health Clinic referred Mr. Kikkert to a psychiatrist. Mr. Kikkert is resistant to psychiatric medications. Mr. Kikkert reports that he has contacted the VA to make an appointment with psychiatrist and he is waiting for a response. He is willing to discuss medications, but he believes medications should not be warranted as long as he is otherwise compliant with his release conditions and actively engaged in counseling and group therapy.

**B.     A custodial sentence is not necessary to reflect the seriousness of the offense or promote respect for the law.**

In terms of punishment, a sentence of probation – far from being an "act of leniency" – reflects a "substantial restriction of freedom." *Gall v. United States*, 552 U.S. 38, 44, 48 (2007). As the Court noted, "[p]robation is not granted out of a spirit of leniency," nor is it "merely letting an offender off easy." *Id*. at 48, n.4. (internal citations and quotations omitted). Often these conditions comprehensively regulate significant facets of a defendant's day-to-day life. While custodial sentences are

DEFENDANT'S SENTENCING
MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

qualitatively more severe, probationers are nonetheless subject to significant conditions that substantially restrict their liberty. *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (citations and quotations omitted).

Mr. Kikkert will be subject to strict supervision and treatment conditions. He understands that his conduct was serious, but his arrest and initial period of incarceration are sufficient to reflect the seriousness of the offense, particularly in light of his military service and underlying mental health issues which mitigate his conduct.

C.   **Additional custody is unnecessary to protect the community.**

Mr. Kikkert has demonstrated that incarceration is not necessary to protect the community and supervision is sufficient for that purpose. His mental health issues are directly related to his offense conduct and he understands that he must remain engaged in treatment and counseling. Thus far, he has demonstrated he can manage his mental health issues with treatment and supervision.

A custodial sentence will not deter future offense and may have the opposite effect. This is borne out in the research:

> Imprisonment can be justified on the grounds of just deserts and incapacitation, but the criminological fact of null effect for custodial sanctions undermines any justification based on specific deterrence.

Damon M. Petrich, Travis C. Pratt, et.al., *Custodial Sanctions and Reoffending: A Meta-Analytic Review*, Crime and Justice, Vol. 20 at 353, 402 (2021). To the contrary, a custodial sentence in this case would disrupt the progress Mr. Kikkert has made over the last two months. If a term of custody is imposed, it would affect his current treatment, benefits, housing, and overall stability that he has achieved.

DEFENDANT'S SENTENCING
MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

**D. A sentence longer than time-served will not further general deterrence.**

The belief that more severe sentences serve as a general deterrent to crime has been refuted by research. As one criminologist concluded there is "no real evidence of a deterrent effect for severity." Pasternoster, R., *How Much Do We Really Know About Criminal Deterrence*, 100 J. Crim. L. & Criminology 765, 817 (2010). Lengthy sentences do not provide meaningful deterrence because most offenders do not think about the criminal consequences of their actions. *See* Doob, A. & Webster, C., *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143, 182-83 (2003). If offenders weigh the perceived costs and benefits, "in virtually every deterrence study to date, the perceived certainty of punishment was more important than the perceived severity." Pasternoster, *supra*, at 812; Doob & Webster, *supra* at 189 ("no consistent and plausible evidence that harsher sentences deter crime").

## III. THIS COURT SHOULD NOT IMPOSE THE COMPUTER MONITORING CONDITIONS RECOMMENDED BY THE PROBATION DEPARTMENT.

The Probation Department recommends a three-year term of supervised release that includes the following special conditions:

1. The defendant shall allow a probation officer to inspect any personal computer owned or operated by the defendant.

2. The defendant shall comply with the requirements of the U.S. Probation and Pretrial Services Computer Monitoring Program as directed. The defendant shall consent to the U.S. Probation and Pretrial Services Office conducting ongoing monitoring of his/her computer(s), hardware, and software, and any/and all electronic devices/media. The monitoring will include the installation, at the defendant's expense, of hardware or software systems that allow evaluation of his/her computer use. Monitoring may also include the retrieval and copying of all data from his/her computer(s) or any/and all other electronic devices/media. The defendant may be subject to quarterly polygraph testing at his/her expense, solely to ensure compliance with the requirements of the monitoring

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

program. The defendant hereby consents to U.S. Probation and
Pretrial Services' use of electronic detection devices to evaluate
the defendant's access to Wi-Fi (wireless fidelity) connections.

Probation Department Recommendation, at 2.

Mr. Kikkert objects to these two special conditions and asks that the Court either not impose computer monitoring conditions or limit the scope of these conditions. While Mr. Kikkert understands the Probation Department's concern about his computer use, the computer monitoring and inspection conditions are not narrowly tailored. The monitoring program would make Mr. Kikkert's most intimate communications with loved ones and his personal diary subject to constant surveillance and inspection without reasonable suspicion that he is violating the conditions of his release.[2] As written, the conditions are not narrowly tailored to achieve the goals of sentencing, particularly in this case where Mr. Kikkert never tried to hide his activities. His threatening communications were made with his own phone number and user information. This is not a case where the Probation Department needs to monitor clandestine computer activity.

The Probation Department's computer monitoring program allows for constant, near-simultaneous monitoring of a person's electronic devices. The monitoring program requires the defendant to pay for software to be installed on each of the defendant's electronic devices.[3] The software allows the Probation Department to see, in real-time, everything that the defendant is doing on the computer or mobile device, allowing the Probation Department to see every email/text message as well as any photos, journals, or other documents that are accessed by the defendant. In addition, the proposed

---

[2] Proposed special condition #7, to which Mr. Kikkert does not object, allows the Probation Department to search his property, including electronic data, upon reasonable suspicion of contraband or evidence of a violation of one of the other conditions of supervised release.

[3] The software costs $50 for each computer, $30 for each mobile device, and $35/month thereafter for monitoring.

DEFENDANT'S SENTENCING
MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

conditions would allow a physical inspection of any computer or mobile device without reasonable suspicion.[4]

A discretionary condition may be imposed only to the extent that it: (1) is "reasonably related" to the statutory sentencing factors, and (2) involves "no greater deprivation of liberty than is reasonably necessary" to serve the purposes of deterrence, protection of the public, and training and treatment. 18 U.S.C. § 3583(d). In the event of an objection, it is the Government's burden to show that the condition is justified. *United States v. Weber*, 451 F.3d 553 (9th Cir. 2006). As the Ninth Circuit explained in *Weber*:

> [W]hen the government seeks to restrict a defendant's liberty through a term of supervised release, it shoulders the burden of proving that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release.

*Id*.

In *United States v. Sales*, 476 F.3d 732 (9th Cir. 2007), the Ninth Circuit vacated computer restrictions in a case where the defendant had used computer equipment to commit a counterfeiting offense. The first condition struck down by the Court was a requirement that the defendant obtain approval from his probation officer before using any particular computer or internet account. *Id*. at 736. Here, proposed condition #1 does not require Mr. Kikkert to obtain permission to use electronic devices, but it allows the Probation Department to inspect any personal computer "owned or operated" by Mr. Kikkert. In *Sales*, the Court noted that the range of devices covered by this condition is "extremely expansive, apparently extending to any device capable of accessing the internet." *Id*. at 736. The Court found that the breadth of the condition

---

[4] The above description of the computer monitoring program is taken from counsel's discussion with the Probation Department's computer monitoring specialist, Officer Timisha Gilbert, on 9/26/22.

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

was not reasonably related to the offense or the history/characteristics of the defendant, and it was "far greater than is reasonably necessary" achieve the goals of sentencing. *Id*.

In this case, the proposed condition would allow inspection, without reasonable suspicion, of *any* computer *operated* by Mr. Kikkert. Even if the condition was limited to computers owned by Mr. Kikkert, it would still be too broad given the circumstances of the underlying offense, i.e., Mr. Kikkert did not hide his identity. Furthermore, this condition would presumably require inspection of computers that Mr. Kikkert uses to apply for benefits or housing, search for a job, check the bus schedule, or find a library book. The scope of the condition is not narrowly tailored.

The Court in *Sales* also struck the computer monitoring and inspection condition which is very similar to the Probation Department's proposed special condition #2. *Id.* at 737-38. The Court noted that the condition gives no indication of the "kinds or degrees of monitoring" which are authorized. *Id*. Here, the monitoring program and search conditions allow for unfettered access to Mr. Kikkert's computer documents and activities.

This Court should consider less intrusive means of monitoring Mr. Kikkert. While Mr. Kikkert committed the underlying offense using electronic devices, he did not attempt to hide his identity. He used his own name and accounts that were publicly associated with him. The defense suggests that the Court impose a condition that requires Mr. Kikkert to disclose to the Probation Department all of his phone number(s), email address(es), and social media account(s). The Probation Department can monitor his social media accounts and, if he uses his phone or email to threaten someone, he could be easily identified, and the Probation Department could take appropriate action.

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### IV. THE PROPOSED SPECIAL CONDITIONS RELATED TO FORCED MEDICATION AND INVOLUNTARY COMMITMENT SHOULD NOT BE IMPOSED.

The Probation Department also recommends the following mental health conditions to which Mr. Kikkert objects, in part.

> 5. The defendant shall participate as directed in a mental health program approved by the United States Probation Office and follow all recommendations of the treatment provider to include psychotropic medications. However, the Defendant's refusal to take psychotropic medication prescribed by such a treatment provider shall not be a violation of supervised release unless the Court, after affording the Defendant due process, determines and orders that the Defendant shall be compelled to take such medication, and the Defendant thereafter violates the Court's order. The defendant must contribute towards the cost of any programs, to the extent the defendant is financially able to do so, as determined by the U.S. Probation Officer.
>
> 6. Defendant shall submit to psychiatric hospitalization if directed by his mental health treatment provider for a period not to exceed 72 hours, which may be extended if ordered by the court after an opportunity to be heard.

Recommendation, at 2.

Regarding special condition #5, Mr. Kikkert has no objection to a condition that requires his participation in mental health treatment. However, the forced anti-psychotic medication section of the condition should not be imposed at this time and only reconsidered if Mr. Kikkert's behavior while on supervised release warrants reconsideration.

Courts have recognized that antipsychotic medications are a particularly intrusive category of drug that alters mental processes, affects behavior and demeanor, and "interferes with a person's self-autonomy," in addition to subjecting patients to serious side effects. *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir.2004); *see also Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992);

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Kulas v. Valdez*, 159 F.3d 453 (9th Cir.1998). In *Williams,* the Court recognized that a condition of supervised release "compelling a person to take antipsychotic medication is an especially grave infringement of liberty," such that the usual rule that a district court need not articulate its reasons for imposing supervised release conditions does not apply. 356 F.3d at 1055. Instead, where forced antipsychotic medication is concerned, "a thorough inquiry is required before a court" may include it as a condition of supervised release. *Id*. This inquiry requires the district court to "make an explicit finding on the record that the condition 'involves no greater deprivation of liberty than is reasonably necessary.'" *Id*. at 1057 (quoting 18 U.S.C. § 3583(d)(2)). In addition, the parties must develop "medically-informed records," *id*. at 1056, to permit the district court to make "on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1)," *id*. at 1057. Those factors include the nature of the crime, the history and characteristics of the defendant, and the need to encourage deterrence, protect the public, and provide the defendant with rehabilitative services. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C) & (a)(2)(D).

Counsel does not dispute that Mr. Kikkert has mental health issues and the VA has referred him to a psychiatrist for further assessment. However, a referral for consultation with a psychiatrist is not a sufficient basis for a forced-medication condition, particularly where Mr. Kikkert is otherwise compliant with the conditions of his bond conditions.

Proposed special condition #6, which injects this Court into state proceedings for mental health civil commitments, should not be imposed. The Washington State Involuntary Treatment Act (hereinafter, the Act), RCW 71.05 *et seq*, provides for the involuntary detention of individuals who suffer from a mental disorder which causes

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 12

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the person to be gravely disabled or a risk of harm to self/others.[5] The Act provides a process by which a trained Designated Crisis Responder (DCR) makes an assessment that a person should be detained under the Act. The initial detention can last up to 120 hours, excluding weekends and holidays. If the treatment team determines the person is still at risk, it can petition a court for a 14-day commitment, at which time the respondent would be entitled to a court hearing. If the person is need of a longer term of confinement, the court can order a 90-day term of commitment and sent to a long-term care facility, such as Western State Hospital. *Id*.

The proposed special condition #6 attempts to create an involuntary commitment process before this Court without outlining any definitions, such as the basis for detaining Mr. Kikkert. Such a process is not necessary. If Mr. Kikkert's condition was such that he posed a danger to the community or was gravely disabled, the treatment providers can contact a DCR and have Mr. Kikkert committed. The state process under the Act would ensure that professionals experienced with the involuntary commitment process are utilized.

## V. CONCLUSION

This Court is required to impose the minimum term necessary to achieve the goals of sentencing. The joint recommendation for time-served and three years of supervised release is an appropriate sentence in light of Mr. Kikkert's mental health issues.

//
//
//

---

[5] For a summary of the Involuntary Treatment Act, *see* https://www.hca.wa.gov/assets/program/fact-sheet-involuntary-treatment-act-2022.pdf

DEFENDANT'S SENTENCING MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 13

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

This computer inspection and monitoring conditions that allow for searches and monitoring without reasonable suspicion are not sufficiently narrowly tailored and should be stricken or narrowed. Likewise, the psychotropic medication and involuntary commitment conditions should not be imposed.

DATED this 26th day of September 2022.

Respectfully submitted,

s/ *Dennis Carroll*
Assistant Federal Public Defender
Attorney for Eric Kikkert

DEFENDANT'S SENTENCING
MEMORANDUM
(*USA v. Kikkert* / CR22-053-LK) - 14

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**