UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>ERIC KIKKERT,<br><br>  Defendant. | CASE NO. 2:22-cr-0053-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE |

This matter comes before the Court on Defendant Erik Kikkert's Motion to Modify Conditions of Supervision to remove "the special conditions of computer monitoring and compliance with psychotropic medication." Dkt. No. 48 at 1. The Government opposes the motion, Dkt. Nos. 49, 51, and U.S. Probation and Pretrial Services supports the modifications in part.[1] The Court held a hearing on the motion on July 21, 2023, and heard from Mr. Kikkert, his attorneys, the Government, and the Probation and Pretrial Services Officer. Dkt. No. 55.

---

[1] Probation and Pretrial Services provided their recommendation to the parties and the Court and filed it under seal. Dkt. No. 54.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE - 1

## I. BACKGROUND

On May 10, 2022, Mr. Kikkert pleaded guilty to one count of Interstate Threats in violation of 18 U.S.C. § 875(c). Dkt. Nos. 20, 21. The elements of the crime were that (1) he knowingly transmitted in interstate commerce a communication containing a threat to injure someone, and (2) such communication was transmitted for the purpose of issuing a true threat. Dkt. No. 21 at 2. The Court accepted his plea of guilty. Dkt. No. 25. The Court held a sentencing hearing on October 5, 2022, and sentenced him to time served, three years of supervised release with standard and special conditions, and a $100 special assessment. Dkt. Nos. 43, 44. As relevant here, the special conditions required Mr. Kikkert to consent to having Probation and Pretrial Services conduct "ongoing monitoring of [his] computer(s), hardware, and software, and any/and all electronic devices/media." Dkt. No. 44 at 5. Such monitoring included the installation "of hardware or software systems that allow evaluation of [his] computer use" and "may also include the retrieval and copying of all data from [his] computer(s) or any/and all other electronic devices/media." *Id.* The conditions also stated that he "may be subject to quarterly polygraph testing . . . solely to ensure compliance with the requirements of the monitoring program." *Id.*

In addition, the conditions required Mr. Kikkert to participate "as directed in a mental health program approved by the United States Probation Office and follow all recommendations of the treatment provider to include psychotropic medications." *Id.* His refusal to take those medications, however, "shall not be a violation of supervised release unless the Court, after affording [Mr. Kikkert] due process, determines and orders that [he] shall be compelled to take such medication, and [he] thereafter violates the Court's order." *Id.* Finally, the conditions required Mr. Kikkert to "submit to psychiatric hospitalization if directed by his mental health treatment provider for a period not to exceed 72 hours, which may be extended if ordered by the court after an opportunity to be heard." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE - 2

On December 23, 2022, Probation and Pretrial Services petitioned the Court to modify Mr. Kikkert's conditions of release. Dkt. No. 45. The petition noted that the required computer monitoring program was not fully compatible with Mr. Kikkert's iPhone, and requested that the requirement be modified so that rather than monitoring his iPhone in real time, Mr. Kikkert would instead "submit to periodic polygraph testing at the discretion of the probation office as a means to ensure that he . . . is in compliance with the requirements of his . . . supervision or treatment program." Dkt. No 45 at 1. The petition further stated that Mr. Kikkert "remains subject to computer inspection on the use of a laptop or desktop computer that has access to the internet." *Id.* The Court approved the requested modification. *Id.* at 2.

Now, Mr. Kikkert seeks to remove entirely the conditions regarding computer monitoring and medication. He avers in a letter to the Court that the monitoring "deprives [him] of a privacy to conduct [his] everyday life," allows others access to his personal information including "private photos, private messages, [and] bank account passwords," and has caused him to abandon certain hobbies including poetry, song writing, and composition because of the privacy intrusion. Dkt. No. 48-1. He states that the monitoring, which he pays for, imposes a financial burden on him. *Id.* And with respect to the medication requirement, Mr. Kikkert states that he does not "wish to intoxicate [his] body" or violate his religious beliefs by taking medication that might be prescribed. *Id.*

The Government opposes the motion, noting that Mr. Kikkert has a history of severe mental health issues, threatened multiple government officials, and attempted to purchase a firearm despite being a convicted felon. Dkt. No. 49 at 1. Although he has not committed any violations of his conditions of supervision, fewer than ten months have passed since his sentencing, and it is "premature to conclude that [he] has fully turned the corner." *Id.*

Probation and Pretrial Services supports removing the computer monitoring condition because the Department of Veterans Affairs recently provided Mr. Kikkert with a Samsung

1   Chromebook that apparently cannot be monitored in real time. Dkt. No. 51 at 1; Dkt. No. 52 at 1–
2   2; Dkt. No. 54 at 2. Probation and Pretrial Services proposes instead to rely on polygraphs and the
3   existing inspection condition. Dkt. No. 52 at 1; Dkt. No. 54 at 3. Probation and Pretrial Services
4   also notes that staff currently monitor Mr. Kikkert's other laptop. Dkt. No. 54 at 2. They visit him
5   at least monthly and physically inspect his phone. *Id.* Probation and Pretrial Services recommends
6   maintaining the condition that he participate as directed in a mental health program approved by
7   Probation and Pretrial Services and follow all recommendations of his treatment provider to
8   include psychotropic medications, and supports deleting the condition describing what will occur
9   if Mr. Kikkert were prescribed psychotropic medication and refused to take it. *Id.* at 3–4. Although
10  Mr. Kikkert's motion did not request modification of the condition regarding involuntary
11  hospitalization, Probation and Pretrial Services recommends deleting that condition and adding
12  language describing the standard for such hospitalization. *Id.* at 4. In his reply, Mr. Kikkert agreed
13  with this recommendation. Dkt. No. 52 at 2–3.

## II. DISCUSSION

15      A district court has broad discretion to modify conditions of supervised release. *United*
16  *States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000). After considering the factors set forth in 18
17  U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), the district
18  court may modify the conditions of supervised release "at any time prior to the expiration or
19  termination of the term of supervised release, pursuant to the provisions of the Federal Rules of
20  Criminal Procedure relating to the modification of probation and the provisions applicable to the
21  initial setting of the terms and conditions of post-release supervision[.]" 18 U.S.C. § 3583(e)(2).
22  Thus, the requirements for Section 3583(e)(2) modification are that the district court consider the
23  listed Section 3553(a) factors, follow the procedure outlined in Federal Rule of Criminal Procedure
24  32.1(c), and ensure that the modified conditions are consistent with the general requirements set

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE - 4

forth in Section 3583(d). *See United States v. Bainbridge*, 746 F.3d 943, 950 (9th Cir. 2014); *United States v. Tolliver*, No. CR20-0109-JLR, 2023 WL 3738052, at *1 n.2 (W.D. Wash. May 31, 2023).

Based on the relevant 3553(a) factors listed in 18 U.S.C. 3583(e), and for the reasons stated in the July 21, 2023 hearing, the Court finds that continued monitoring, with the exception of Mr. Kikkert's iPhone and Samsung Chromebook,[2] is the least restrictive means possible of protecting the public from future offenses, deterring him from committing any future offenses, and ensuring that there is timely intervention to get him any help that he may need. Given the seriousness of Mr. Kikkert's prior threats, made using his internet-enabled devices, Dkt. No. 9 at 1–2, Dkt. No. 21 at 5, Dkt. No. 38 at 4–5, and his recent communication informing the White House that he has an HIV vaccine and a cure for cancer, Dkt. No. 54 at 2, continued monitoring is warranted. Although Mr. Kikkert complains about the loss of his privacy, Dkt. No. 48-1, some loss of privacy is inherent in federal supervision. Furthermore, his privacy with respect to his electronic devices is already curtailed given that those devices are subject to physical inspection and copying. Dkt. No. 44 at 5; Dkt. No. 45 at 1–2.

With respect to Mr. Kikkert's concerns regarding the cost of computer monitoring, as the Court explained during the hearing, Probation and Pretrial Services may be able to offer alternatives to reduce or eliminate the cost of monitoring if Mr. Kikkert is unable to afford it. If he cannot reach a satisfactory resolution with Probation and Pretrial Services, Mr. Kikkert can bring the issue back before the Court.

---

[2] The Court makes this modification to Mr. Kikkert's conditions of release to delete the requirement for real time monitoring of his VA-provided Samsung Chromebook because Probation and Pretrial Services is unable to effectively monitor that device. Dkt. No. 54 at 2.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE - 5

The Court also declines to modify the mental health-related special conditions. Because the Court finds it best to defer to Mr. Kikkert's mental health professionals in terms of determining what set of circumstances makes it appropriate to hospitalize him to ensure his safety and that of the community, the Court will not change the special condition regarding any such hospitalization. Nor will it modify the special condition requiring Mr. Kikkert to comply with the recommendations of his treatment providers and describing what will occur if a provider were to prescribe him medication. In that circumstance, he would be entitled to a hearing to determine if the Court would compel him to take the recommended medication. Dkt. No. 44 at 5. Only if the Court compels him to take medication and he "thereafter violates the Court's order" would his refusal to take medication be considered a violation. *Id.* Although his counsel expressed concern that the condition could make Mr. Kikkert less forthcoming with his treatment providers, Dkt. No. 52 at 2, there is no medical opinion in the record to support that concern. Nor are there any medical records supporting Mr. Kikkert's assertion that the VA psychiatrist advised him that no follow up was required and no medications were recommended. Dkt. No. 48 at 3; *but cf.* Dkt. No. 54 at 2. And Probation and Pretrial Services recommends that the Court maintain the condition that Mr. Kikkert be required to take medications if prescribed. Dkt. No. 54 at 3. Furthermore, taking a "wait and see" approach and relying on the hospitalization condition alone is an insufficient precaution considering how quickly Mr. Kikkert's messages (including a voicemail regarding a vaccine) escalated to action in his previous episode, and considering Mr. Kikkert's recent communication to the White House regarding vaccines and cures. *See* Dkt. No. 38 at 4–5; Dkt. No. 54 at 2; *see also* Dkt. No. 48-1 at 1 (letter denying having any "condition that prevents [him] from regulating [his] own thoughts and actions."). The record before the Court does not indicate that the concerns supporting imposition of the mental health-related conditions have been resolved. These conditions remain the least restrictive means possible of protecting the public from future offenses,

deterring Mr. Kikkert from committing any future offenses, and ensuring that there is timely intervention to get him any help that he may need.[3]

Although the Court will not remove the contested conditions at this stage, it commends Mr. Kikkert for his compliance during supervision and his plans to attend college classes soon. As noted at the hearing, the Court may revisit the issue in the future on an appropriate motion once more time has passed.

The Court therefore GRANTS IN PART AND DENIES IN PART Mr. Kikkert's motion, Dkt. No. 48, and ORDERS that the special condition of real time monitoring of the Samsung Chromebook provided to Mr. Kikkert by the Department of Veterans Affairs is hereby removed. All other terms and conditions of Mr. Kikkert's supervised release not inconsistent herewith shall remain in full force and effect.

Dated this 24th day of July, 2023.

*Lauren King*

Lauren King
United States District Judge

---

[3] During the July 21, 2023 hearing, Mr. Kikkert stated that the reason he traveled to the Senate Hart Building in Washington, D.C. at the time of his crime was because he believed he had a constitutional right to personally "revoke [Congresspersons'] executive legislative ability" if he "found them to be in violation of the Constitution." July 21, 2023 Hr'g Tr. at 13–14; *but see* Dkt. No. 38 at 4–5. No such revocation right exists under the Constitution, and the Court hopes that Mr. Kikkert no longer views this as an option.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY CONDITIONS OF RELEASE - 7